ORIGINAL

FILED

2011 MAR -8 A 11: 44

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  VAHN ALEXANDER (167373)
   **FARUQI & FARUQI, LLP**
2  1901 Avenue of the Stars, 2nd Floor
   Los Angeles, CA 90067
3  Telephone: (310) 461-1426
   Facsimile: (310) 461-1427
4  valexander@faruqilaw.com

5  *Attorneys for Plaintiff*

6                                    E-filing

7                  UNITED STATES DISTRICT COURT

8              NORTHERN DISTRICT OF CALIFORNIA

9                                              SBA

10 MICHAEL RURA, on behalf of himself and all
   others similarly situated,                  CV 11    1075
11
12                                Plaintiff,

13      v.                                  **CLASS ACTION COMPLAINT**

14 NETFLIX, INC.,
                                            **JURY TRIAL DEMANDED**
15
                                Defendant.
16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1        Plaintiff Michael Rura ("Plaintiff"), by and through the undersigned attorneys, brings this

2  action on behalf of himself and all others similarly situated against defendant Netflix, Inc. Plaintiff

3  makes the following allegations upon personal knowledge as to his own experiences, and upon

4  information and belief as to all other matters:

5                              **NATURE OF THE ACTION**

6        1.      Plaintiff brings this Class Action Complaint against defendant Netflix, Inc.

7  ("Defendant" or "Netflix") for Netflix's unlawful retention and disclosure of his personally

8  identifiable information ("PII") and video programming viewing history after cancellation of his

9  Netflix membership. As alleged herein, Netflix has assumed the role of "Big Brother" and violated

10  the privacy rights of its former customers in violation of federal and state laws by improperly

11  retaining their video programming viewing histories, names, mailing addresses, e-mail addresses,

12  Internet passwords, payment methods, telephone numbers, and credit card or debit card information.

13  Through such practices, Netflix continues to maintain access to Plaintiff's private information years

14  after their business relationship ended.

15        2.      Netflix owns and operates the website www.Netflix.com, which provides streaming

16  video *via* the Internet and online video rental services to over 20 million subscribers.

17        3.      Netflix maintains a digital record system that details every streaming video or video

18  rental that its subscribers have ordered during the course of their membership. In addition, Netflix

19  stores and analyzes the movie preferences of its subscribers based upon a user-inputted ranking

20  system.

21        4.      Netflix maintains records containing its users' billing and contact information on its

22  server computers.

23        5.      Netflix retains, stores, and utilizes the information described in paragraphs three (3)

24  and four (4) *supra*, for a period of at least two (2) years after a subscriber cancels his or her account

25  with Netflix.

26        6.      As a result, Netflix maintains a digital database of thousands, if not millions, of

27  former subscribers. These records contain not only the former subscriber's name, postal delivery

28

CLASS ACTION COMPLAINT                                           1

address, e-mail address, telephone number, method of payment, credit or debit card number, and Internet username and password, but also a highly detailed account of the individual's video programming viewing history.

7.     Accordingly, Netflix has knowingly retained the PII and sensitive video programming viewing histories of former subscribers in violation of state and federal laws.

## PARTIES

8.     Plaintiff Michael Rura is a natural person and citizen of the State of New York, and a former Netflix subscriber.

9.     Defendant Netflix, Inc., is a corporation organized and existing under the laws of the state of Delaware with its headquarters and principal place of business located at 100 Winchester, Los Gatos, California 95032.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over Plaintiff's claims arising under the laws of the United States pursuant to 18 U.S.C. § 2710(c) and 28 U.S.C. § 1331, and, as to all other claims, pursuant to 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over Netflix because it maintains its corporate headquarters in this District and the improper conduct alleged in the Complaint occurred in, was directed and/or emanated from California.

12.     This Court is an appropriate venue for the adjudication of this controversy because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## INTRADISTRICT ASIGNMENT

13.     Pursuant to Civil Local Rule 3-2(e), this case shall be assigned to the San Jose Division.

## FACTUAL BACKGROUND

### A Brief Overview of Netflix

14.     On its website, Netflix boasts that, "[w]ith more than 20 million members in the United States and Canada, Netflix, Inc. is the world's leading Internet subscription service for

1   enjoying movies and TV shows." *See* Netflix Press Info., http://www.netflix.com/MediaCenter

2   (last visited February 17, 2011).

3   15.   Netflix has developed an extensive and complex online system to provide catalogued

4   video programming to its subscribers. Using this system, subscribers are offered the opportunity to

5   rank in order of preference a wide variety of viewing selections. Netflix uses these user-inputted

6   rankings to recommend video programming to the subscriber based upon his or her preferences.

7   16.   Subscribers of Netflix's services may also rent DVD's from Defendant's website,

8   which are then physically shipped to the individual.

9   17.   Netflix subscribers are able to cancel their subscription to Netflix's services at any

10  time through its website.

11  18.   Netflix posts its Privacy Policy on its website. The Privacy Policy "explains

12  [Netflix's] policy regarding the collection, use and disclosure of your personal information." The

13  Privacy Policy states that "[p]ersonal information means information that can be used to identify

14  and contact you, specifically your name, postal delivery address, e-mail address, payment method

15  (*e.g.* credit card, debit card, or other payment method accepted on our website) and telephone

16  number, as well as other information when such information is combined with your personal

17  information." According to the Privacy Policy Netflix collects, stores, uses and analyzes

18  information from its subscribers in the following manner:

19      We keep track of your interactions with us and collect information related to your
20      use of our service, including but not limited to your online activity, title selections
        and ratings, payment history and correspondence as well as Internet protocol
21      addresses, device types, operating systems, any instant watching of movies, TV
        shows and related activity. We use this information for such purposes as providing
22      recommendations on movies and TV shows we think will be enjoyable,
        personalizing the service to better reflect particular interests, tracking your instant-
23      watching hours, helping us quickly and efficiently respond to inquiries and requests
        and otherwise enhancing or administering our service offering for our customers.

24

25  *See* Netflix Privacy Policy, http://www.netflix.com/PrivacyPolicy (last visited February 17, 2011).

26  19.   In addition to their programming preferences, Defendant allows subscribers to keep

27  track of movies and television shows they would like to watch in the future, in what is known as a

28  "queue."

CLASS ACTION COMPLAINT

3

20.     A queue is essentially a list of video programming, selected and organized by the subscriber for later viewing.

21.     Defendant continues to store its former subscribers' queues, along with their contact, billing and viewing preference information, even after subscribers cancel their memberships.

22.     The video programming that Netflix stores includes, but is not necessarily limited to, every streaming video that the consumer has watched, every DVD the consumer has ever rented, and the video rankings that the consumer has assigned to other videos, which in turn reveals that individual's preferences.

23.     Former subscribers who log-in to their cancelled Netflix account are greeted with previously inputted credit or debit card numbers, contact information and other PII.  In addition, Defendant retains video programming history for more than one year after its customers have terminated their service with Netflix.

24.     Under the heading "Collection and Use of Information," Defendant's Privacy Policy states that Netflix uses this information to "provide analysis of our users, in the aggregate to prospective partners, advertisers and other third parties."  *See supra*, Netflix Privacy Policy. Netflix's Terms of Use Agreement also states, "Netflix is free to use any comments, information, ideas, concepts, reviews, or techniques or any other material contained in any communication you may send to us ("Feedback") . . . without further compensation, acknowledgement or payment to you for any purpose whatsoever . . . . Furthermore, by posting any Feedback on our site, submitting Feedback to us, or in responding to questionnaires, you grant us a perpetual, non-exclusive, royalty-free irrevocable license and right to display, use, reproduce or modify the Feedback . . . ."  Armed with the knowledge that Netflix retains and discloses all manner of information from its subscribers in perpetuity, it is now clear that Defendant continues to profit and benefit from the use of its former subscribers' personal information, including their video programming viewing histories, even though these individuals have cancelled their subscriptions.

---

CLASS ACTION COMPLAINT                                                                                   4

## The Video Privacy Protection Act and Digital Dossiers

25.    The desire to keep video programming viewing history records private led Congress to enact the Video Privacy Protection Act in 1988 (the "Act" or "VPPA"). Inspired by the release of video viewing records of Supreme Court Justice Nominee Robert H. Bork and his family, Congress promulgated the Act to explicitly preserve United States citizens' right to privacy in their video viewing histories.

26.    When the VPPA was introduced, the late Senator Paul Simon noted that,

> There is no denying that the computer age has revolutionized our world. Over the past 20 years we have seen remarkable changes in the way each one of us goes about our lives. Our children learn through computers. We bank by machine. We watch movies in our living rooms. These technological innovations are exciting and as a nation we should be proud of the accomplishments we have made. Yet, as we continue to move ahead, we must protect time honored values that are so central to this society, particularly our right to Privacy. The advent of the computer means not only that we can be more efficient than ever before, but that we have the ability to be more intrusive than ever before. Every day Americans are forced to provide to businesses and others personal information without having any control over where that information goes. These records are a window into our loves, likes, and dislikes.

S.Rep. No. 100-599 at 7-8 (1988).

27.    In another strikingly accurate forward-looking statement, Senator Patrick Leahy remarked that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S.Rep. No. 100-599 at 8 (1988).

28.    Although in 1988 these Senators could not possibly forecast the amount of data collected about consumers today by large video-programming providers such as Netflix, both Sen. Simon's and Sen. Leahy's comments would prove prescient.

29.    Many glaring and dangerous privacy issues are implicated by Netflix's practice of retaining customer information indefinitely after cancellation of Defendant's services—the exact type of dangers that the VPPA was enacted to thwart.

30.    As a practical and logical matter, and based on Netflix's Terms of Use Agreement, a former subscriber who cancels his or her Netflix account is likely to be misled that Defendant

1   purges its system of his or her private information upon cancellation.  Most, if not all consumers,

2   would feel extremely uncomfortable with the prospect that Defendant continues to store their credit

3   card numbers and a detailed record of their video programming viewing histories, among other non-

4   public identifying information, after their membership is over.

5          31.     Furthermore, Netflix's practices are indicative of a larger problem that is beginning

6   to plague Internet users—the development and maintenance of digital dossiers on consumers by

7   online companies.

8          32.     Professor Daniel Solove, an expert in privacy law at the George Washington

9   University Law School has written extensively on this topic, and explains the crux of the problem as

10  follows:

11          While life in the Information Age has brought us a dizzying amount of information, it
            has also placed a profound amount of information about our lives in the hands of
12          numerous entities. These digital dossiers are increasingly becoming digital
            biographies, a horde of aggregated bits of information combined to reveal a portrait of
13          who we are based upon what we buy, the organizations we belong to, how we
            navigate the Internet, and which shows and videos we watch. This information is not
14          held by trusted friends or family members, but by large bureaucracies that we do not
            know very well or sometimes do not even know at all.
15

16  *See* Daniel J. Solove, *Digital Dossiers and the Dissipation of Fourth Amendment Privacy*, 75 S.

17  Cal. L. Rev. 1083, 1095 (2002).

18          33.     The retention of subscriber information is not the first privacy concern that has raised

19  eyebrows about Netflix's business practices.  In March of 2010, Associate Director Maneesha

20  Mithal of the Division of Privacy and Identity Protection at the Federal Trade Commission issued a

21  public letter to Netflix cautioning Defendant about the release of data regarding the video

22  programming     viewing     history     of     its     subscribers.  *See*  FTC   Netflix   Letter,

23  http://www.ftc.gov/os/closings/100312Netflixletter.pdf (last visited February 17, 2011).

24          34.     It follows then from the discussion above, as well as the unlawful behavior described

25  in this Complaint, that Netflix has continuously struggled to fully grasp its duty both to uphold the

26  privacy rights of its current and former subscribers, as well as to comply with federal and state laws

27  regarding the destruction of PII.

28

CLASS ACTION COMPLAINT

6

## FACTS RELATING TO PLAINTIFF

35.    Plaintiff is a former Netflix subscriber who cancelled his account with Defendant more than one (1) year ago.

## CLASS ALLEGATIONS

36.    **Definition of the Class:**  Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of himself and a Class of similarly situated individuals, defined as follows:

> All individuals and entities in the United States and its territories that have cancelled their subscriptions to Netflix's services.

Excluded from the Class are Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent have a controlling interest and their current and former employees, officers, and directors.

37.    **Numerosity:**  The exact number of the members of the Class is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable.  The Class consists of millions of individuals and other entities.  Class members can be easily identified through Defendant's records and public records.

38.    **Commonality:**  There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class.  Common questions for the Class include but are not limited to the following:

(a)    whether Netflix unlawfully retained its former subscribers' PII and video programming viewing histories;

(b)    whether Netflix continues to benefit from the use of personal information relating to its former subscribers' video programming viewing histories;

(c)    whether Netflix's conduct described herein violated the Video Privacy Protection Act (18 U.S.C. § 2710, et seq.);

(d)    whether Netflix's conduct described herein violated the California Customer Records Act (Cal. Civ. Code § 1798.80);

---

CLASS ACTION COMPLAINT

7

1          (e)      whether Netflix's conduct described herein violated California's Unfair

2    Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*);

3          (f)      whether Netflix's conduct violated California's Consumers Legal Remedies

4    Act ("CLRA") (California Civil Code § 1750, *et seq.*)

5          (g)      whether Netflix's conduct constituted a breach of common law covenants

6    with Plaintiff and others similarly situated;

7          (h)      whether Netflix has been unjustly enriched by Plaintiff and the Class; and

8          (i)      whether Netflix has breached its fiduciary duty to Plaintiff and the Class.

9        39.    **Typicality:**  The factual and legal bases of Netflix's liability to Plaintiff and to the

10   other members of the Class are the same and resulted in injury to Plaintiff and all the other members

11   of the Class.  Plaintiff and the other members of the Class have all suffered harm as a result of

12   Netflix's wrongful conduct.

13       40.    **Adequate Representation:**  Plaintiff will fairly and adequately represent and

14   protect the interests of the Class members, and has retained counsel competent and experienced in

15   complex class actions.  Plaintiff has no interest antagonistic to those of the Class and Defendant has

16   no defenses unique to Plaintiff.

17       41.    **Predominance and Superiority:**  This class action is appropriate for certification

18   because class proceedings are superior to all other available methods for the fair and efficient

19   adjudication of this controversy, since joinder of all members is impracticable.  The damages

20   suffered by the individual members of the Class will likely be relatively small, especially given the

21   burden and expense of individual prosecution of the complex litigation necessitated by the actions of

22   Defendant.  It would be virtually impossible for the individual members of the Class to obtain

23   effective relief from the misconduct of Defendant.  Even if members of the Class themselves could

24   sustain such individual litigation, it would still not be preferable to a class action because individual

25   litigation would increase the delay and expense to all parties due to the complex legal and factual

26   controversies presented in this Complaint.  By contrast, a class action presents far fewer management

27   difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive

28

---

CLASS ACTION COMPLAINT                                           8

1 supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity

2 of decisions will be ensured.

3     42. **Policies Generally Applicable to the Class:** This class action is also appropriate

4 for certification because Defendant has acted or refused to act on grounds generally applicable to the

5 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with

6 respect to the Class as a whole. Defendant's policies challenged herein apply to and affect all

7 members of the Class uniformly, and Plaintiff's challenge of these policies hinges on Defendant's

8 conduct, not on facts or law applicable only to Plaintiff.

9

**FIRST CAUSE OF ACTION**
Violations of the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.*
**(On Behalf of Plaintiff and the Class)**

10

11     43. Plaintiff incorporates by reference and re-alleges each and every allegation set forth

12 above as though fully set forth herein.

13     44. Netflix qualifies now and has qualified in the past as a "video tape service provider"

14 under the Video Privacy Protection Act ("VPPA"), because Defendant is "engaged in the business, in

15 or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette

16 tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

17     45. The VPPA mandates, among other things, that a video tape service provider "shall

18 destroy personally identifiable information as soon as practicable, but no later than one year from

19 the date the information is no longer necessary for the purpose for which it was collected." 18

20 U.S.C. § 2710(e).

21     46. Netflix has violated 18 U.S.C. § 2710(e) because Defendant failed to destroy

22 Plaintiff's and other former subscribers' personally identifiable information as soon as practicable,

23 but no later than one year from the date the information was no longer necessary for the purpose for

24 which it was collected—that is, their final day of membership.

25     47. As a result of Defendant's conduct described herein and its violation of 18 U.S.C.

26 § 2710, Plaintiff and the Class have suffered injuries. Plaintiff, on his own behalf and on behalf of

27

28

---

CLASS ACTION COMPLAINT

9

1  the Class, seeks an order enjoining Defendant's conduct described herein and awarding himself and

2  the Class the maximum statutory and punitive damages available under 18 U.S.C. § 2710(c).

3
## SECOND CAUSE OF ACTION
4  **Violations of California's Customer Records Act, Cal. Civ. Code § 1798.80, *et seq.***
**(On Behalf of Plaintiff and the Class)**

5      48.      Plaintiff incorporates by reference and re-alleges each and every allegation set forth

6  above as though fully set forth herein.

7      49.      The California Customer Records Act mandates, among other things, that a business

8  take all reasonable steps to destroy or arrange for the destruction of a customer's records within its

9  custody or control which contain personal information which is no longer to be retained by the

10  business. Cal. Civ. Code § 1798.81.

11      50.      A business may destroy customer records by erasing the information or modifying the

12  personal information in those records to make it unreadable or undecipherable through any means.

13  Cal. Civ. Code § 1798.81.5.

14      51.      Defendant has violated Cal. Civ. Code § 1798.81 by failing to erase or otherwise

15  destroy Plaintiff's and other former subscribers' customer records after cancellation of their

16  membership services.

17      52.      Pursuant to Cal. Civ. Code § 1798.84, Plaintiff and the Class seek damages, including

18  statutory damages of $3,000 per violation and injunctive relief. Plaintiff and the Class also seek

19  attorneys' fees pursuant to Cal, Code Civ. Proc. § 1021.5, as well as such other and further relief as

20  the Court deems just and proper.

21

22
## THIRD CAUSE OF ACTION
23  **Violation of California's Consumers Legal Remedies Act,**
**California Civil Code § 1750, *et seq.***
**(Injunctive Relief Only**
24  **On Behalf of Plaintiff and the Class)**

25      53.      Plaintiff incorporates by reference and re-alleges each and every allegation set forth

26  above as though fully set forth herein.

27      54.      Netflix violated Civil Code § 1770(a)(5), (14) and (19) by inserting unconscionable

28  provisions in its Terms of Use Agreement and by making misleading representations about the

CLASS ACTION COMPLAINT

1  characteristics, uses, benefits or qualities of Netflix's service, and about the rights, remedies and

2  obligations conferred by membership, namely the extent and duration into customers' post-

3  membership period of the purported rights and benefits granted to Netflix in its statements that,

4  "Netflix is free to use any comments, information, ideas, concepts, reviews, or techniques or any

5  other material contained in any communication you may send to us ("Feedback") . . . without

6  further compensation, acknowledgement or payment to you for any purpose whatsoever . . . .

7  Furthermore, by posting any Feedback on our site, submitting Feedback to us, or in responding to

8  questionnaires, you grant us a perpetual, non-exclusive, royalty-free irrevocable license and right to

9  display, use, reproduce or modify the Feedback . . . ."

10       55.    Plaintiff and the members of the Class have suffered harm as a result of these

11  violations of the CLRA because they have incurred charges and/or paid monies for Netflix's service

12  they otherwise would not have incurred or paid.

13       56.    On March 2, 2011, prior to the filing of this Complaint, a CLRA notice letter was

14  served on Defendant which complies in all respects with California Civil Code § 1782(a).  Plaintiff

15  sent Defendant a letter *via* certified mail, return receipt requested, advising Defendant that it is in

16  violation of the CLRA and demanding that they cease and desist from such violations and make full

17  restitution by refunding the monies received therefrom.  Defendant was further advised that in the

18  event that the relief requested has not been provided within (30) days, Plaintiff will amend this

19  Complaint to include a request for monetary damages pursuant to the CLRA.

20       57.    Wherefore, Plaintiff presently seeks only injunctive relief for these violations of the

21  CLRA.

22
                              **FOURTH CAUSE OF ACTION**
23                   **Violation of California's Unfair Competition Law**
                      **Cal. Bus. & Prof. Code § 17200, *et seq.***
24                        **(On Behalf of Plaintiff and the Class)**

25       58.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth

26  above as though fully set forth herein.

27

28

CLASS ACTION COMPLAINT

59.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

60.     The UCL prohibits any unlawful, unfair or fraudulent business act or practice. A business practice need only meet one of the three criteria to be considered unfair competition.  An unlawful business practice is anything that can properly be called a business practice and that at the same time is forbidden by law.

61.     Netflix has violated the fraudulent prong of the UCL in that Plaintiff and the Class were likely to be and were deceived into believing that Netflix's business practices regarding collection and use of customer information did not apply to former customers.

62.     Netflix also violated the fraudulent prong of the UCL by failing to inform Plaintiff and the Class that it would indefinitely retain their personally identifiable information and video programming viewing n histories, including after cancellation of their membership.

63.     Netflix's conduct has violated the unfair prong of the UCL because such conduct violated various laws and policies recognized by the California Legislature and the California courts, including without limitation, the CLRA and Customer Records Act, and because the utility of Netflix's conduct is significantly outweighed by the gravity of the harms it imposed on consumers, and because Netflix's business practices described herein are unethical, oppressive, unscrupulous or substantially injurious to consumers.

64.     Netflix also violated the unfair prong of the UCL because Defendant continues to benefit and profit from sharing, disclosing, selling or otherwise disseminating Plaintiff's and the Class' personal information to third-parties even though they have cancelled their membership with Defendant.

65.     Netflix has violated the unlawful prong of the UCL because Defendant's conduct violated the Video Privacy Protection Act, (18 U.S.C. § 2710, *et seq.*), California's Customer Records Act, (Cal. Civ. Code § 1798.80, *et seq.*) and California's Civil Code § 1770(a)(5), (14) and (19) as described above.

CLASS ACTION COMPLAINT

12

66.     Plaintiff and the members of the Class have suffered harm as a result of these violations of the fraudulent, unfair and unlawful prongs of the UCL because they incurred charges and/or paid monies for Netflix's services they otherwise would not have incurred or paid, and because they had a present and/or future property interest diminished, and were deprived of money and/or property to which they have a cognizable claim.

67.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order of this Court permanently enjoining Netflix from continuing to engage in the unfair and unlawful conduct described herein. Plaintiff seeks an order requiring Defendant to (1) immediately cease the unlawful practices stated in this Complaint, (2) make full restitution of all monies wrongfully obtained, (3) disgorge all ill-gotten revenues and/or profits and (4) pay attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

68.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

69.     Plaintiff and members of the Class conferred a monetary benefit on Defendant. Defendant received and obtained money by continuing to use, disclose, share, sell or otherwise disseminate Plaintiff's and the Class' personal information to third-parties post-cancellation, which was obtained as a result of the unlawful and/or wrongful conduct alleged herein.

70.     Defendant appreciates or has knowledge of such benefit resulting from its unlawful and/or wrongful conduct.

71.     Under principles of equity and good conscience, Defendant should not be permitted to retain the money obtained by disclosing personal information about Plaintiff and members of the Class, which Defendant has unjustly received as a result of its unlawful actions.

72.     Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any amounts Netflix obtained as a result of the unlawful and/or wrongful conduct alleged herein.

CLASS ACTION COMPLAINT

13

## SIXTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Class)

73.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

74.     Because Netflix was entrusted to store Plaintiff's and the Class' PII and video programming viewing histories ("the information"), Defendant owed a fiduciary duty to Plaintiff and the Class to (a) store and dispose of the information in compliance with state and federal laws, and (b) use the information solely in a lawful manner for lawful purposes.

75.     Defendant breached its fiduciary duty to Plaintiff and Class members by:

(a)     Failing to destroy Plaintiff's and the Class' confidential information within a timely manner upon cancellation of membership services; and

(b)     Failing to store and dispose of the information in compliance with the Video Privacy Protection Act (18 U.S.C, § 2710, *et seq.*), and California's Customer Records Act (Cal. Civ. Code § 1798.80, *et seq.*).

76.     Under principles of equity and good conscience, Defendant should not be permitted to retain the money obtained by using and disclosing personal information about Plaintiff and members of the Class to third-parties, which Defendant has received as a result of breaching its fiduciary duties.

77.     Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any amounts Netflix has obtained as a result of the unlawful and/or wrongful conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.     Certify this case as a class action on behalf of the Class denied above, appoint Michael Rura as Class Representative, and appoint his counsel as Class Counsel;

B.     Declare that Netflix's actions, as described herein, violate the Video Privacy Protection Act, (18 U.S.C. § 2710, *et seq.*), California's Customer Records Act, (Cal. Civ. Code § 1798.80, *et seq.*), California's Consumers Legal Remedies Act (Civil Code § 1750, *et seq.*), and

CLASS ACTION COMPLAINT                                                                        14

1   California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*);

2        C.      Award injunctive and other equitable relief as is necessary to protect the interests of

3   the Class, including, *inter alia*: (i) an order prohibiting Netflix from engaging in the wrongful and

4   unlawful acts described herein, and (ii) requiring Netflix to destroy its former subscribers' personally

5   identifiable information and video programming viewing histories;

6        D.      Award damages, including statutory damages of $2,500 per violation under the Video

7   Privacy Protection Act, 18 U.S.C. § 2710(c); $3,000 per violation under California's Customer

8   Records Act, Cal. Civ. Code § 1798.84(c); and punitive damages where applicable, to Plaintiff and

9   the Class in an amount to be determined at trial;

10       E.      Award full restitution to Plaintiff and the Class;

11       F.      Award Plaintiff and the Class their reasonable litigation expenses and attorneys'

12  fees;

13       G.      Award Plaintiff and the Class pre- and post-judgment interest to the extent

14  allowable; and

15       H.      Award such other and further relief as equity and justice may require.

16                              **JURY TRIAL**

17

18       Plaintiff demands a trial by jury for all issues so triable.

19  Dated:  March 7, 2011

                        Respectfully submitted,
20
                        **FARUQI & FARUQI, LLP**
21

22                      Vahn Alexander

23
                        1901 Avenue of the Stars, 2nd Floor
24                      Los Angeles, CA  90067
                        Telephone: (310) 461-1426
25                      Facsimile: (310) 461-1427
                        valexander@faruqilaw.com
26

27                              -and-

28

_____
CLASS ACTION COMPLAINT                                        15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FARUQI & FARUQI, LLP**
Beth A. Keller
369 Lexington Avenue, 10th Floor
New York, NY  10017
Telephone:  (212) 983-9330
Facsimile:  (212) 983-9331

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT

16

## AFFIDAVIT OF MICHAEL RURA

1.      I, Michael Rura, submit this affidavit pursuant to *California Civil Code* §1780(d) of the *Consumers Legal Remedies Act* and declare the following.

2.      I am the named plaintiff in the Complaint filed herewith and I am a resident of Shirley, New York.

3.      I am a former subscriber of Netflix, Inc and cancelled my account more than one (1) year ago.

4.      Defendant Netflix, Inc. conducts business in the Northern District of California where this action has been commenced.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct. Executed this 7th day of March, 2011, at _SHIRLEY_, New York.

_____
Michael Rura